UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PELLA CORPORATION, | ) |
| | ) Case No: 4:11-cv-00273-JAJ-RAW |
| Plaintiff, | ) |
| | ) **DEFENDANT LIBERTY MUTUAL** |
| v. | ) **INSURANCE COMPANY'S** |
| | ) **CONTESTED MOTION FOR** |
| LIBERTY MUTUAL INSURANCE | ) **STAY OF PROCEEDINGS** |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

_____

Pursuant to F.R.C.P. 7 and LR 7, Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), hereby moves for a stay of proceedings, stating as follows:

1. Pella Corporation ("Pella") has filed the instant lawsuit seeking to recover sums under certain indemnity insurance contracts entered into between Pella and Liberty Mutual, which Pella characterizes as "Aggregate SIR Policies." (Complaint, ¶ 2).[1] Pella alleges that Liberty Mutual also issued underlying excess commercial general liability policies (referred to by Pella as "CGL Policies") covering the same time period, each of which provides coverage for bodily injury and property damage, but contains a substantial Self-Insured Amount that Pella must satisfy through the payment of defense costs and/or damages. (Complaint, ¶¶ 2-4).

2. Pella alleges:

> The purpose of the Aggregate SIR Policies is to provide Pella with a cap on the total aggregate amount that it would have to pay toward Self-Insured Amounts under the CGL Policies in the event that numerous lawsuits or other civil proceedings are filed against Pella that require Pella to satisfy numerous Self-Insured Amounts before obtaining coverage from Liberty Mutual under the CGL Policies. Each Aggregate SIR Policy indemnifies Pella for defense costs and/or damages within the Self-Insured Amount of

---

[1] Liberty Mutual does not necessarily agree with Pella's terminology in characterizing the various policies issued by Liberty Mutual or the provisions in them, but will use Pella's terminology in the instant motion for simplicity's sake.

> the corresponding CGL Policy once Pella has paid in total a specified amount of money – known as the "Insured's Retention" – toward defense costs and/or damages falling within the Self-Insured Amount of that CGL Policy.

(Complaint, ¶ 5).

3. Pella alleges that it has made payments falling within the Self-Insured Amounts in the CGL Policies sufficient to exhaust the Insured's Retention, thereby triggering coverage under the Aggregate SIR Policies. Pella seeks "a declaration that it has triggered Liberty Mutual's coverage obligations under t[he] [Aggregate SIR Policies]," (Complaint, ¶ 10), and also seeks damages based on the allegation that the Aggregate SIR Policies have been triggered. (Id., ¶ 11).

4. As Pella acknowledges in its Complaint, Liberty Mutual filed a lawsuit against Pella in this Court, captioned *Liberty Mutual Insurance Co. v. Pella Corp. and Pella Windows and Doors, Inc.,* Case No. 07-cv-00508-JEG-CFB ("Pella I"). (Complaint, ¶ 19). Pella I arises out of claims that Pella knowingly sold defective windows, and the suit is currently pending in the United States Court of Appeals for the Eighth Circuit.

5. Pella I involves a dispute over the interpretation of the very CGL Policies that Pella alleges have been triggered for purposes of sums within the Self-Insured Amounts of the CGL Policies that Pella alleges it has paid and which Pella now alleges exhaust the Insured's Retention in the Aggregate SIR Policies. In fact, the "Underlying Lawsuits" referenced in paragraph 26 of Pella's complaint for purposes of Pella's calculation of its alleged exhaustion of the Insured's Retention include the lawsuits that underlie Pella I. In other words, Pella is including sums incurred in connection with the lawsuits that underlie Pella I based upon the assumption that those lawsuits are potentially covered under the CGL Policies.

6. One of the arguments Liberty Mutual has made in Pella I is that the CGL Policies were not triggered by the allegations of the underlying lawsuits at issue, either for the payment of

damages or the payment of Allocated Loss Adjustment Expense ("ALAE"), because the underlying complaints do *not* allege potentially covered claims. That argument is currently under consideration in the Eighth Circuit, and the Eighth Circuit's resolution of Pella I will directly affect the instant action.

7. One possible effect of Pella I is that if the Eighth Circuit holds that the CGL Policies are not triggered at all by the allegations of the underlying lawsuits, then the instant action will likely be moot because sums Pella counts toward reaching the Insured's Retention would have to be eliminated. Further, the Eighth Circuit's decisions may determine whether defective-window claims asserted against Pella other than in the underlying lawsuits at issue in Pella I are potentially covered under the CGL Policies, which in turn, impacts whether such other lawsuits may be used in Pella's calculation toward reaching the Insured's Retention. At bottom, the issues—if any—to be addressed in this action will be shaped by the Eighth Circuit's ruling in Pella I.

8. Oral argument in the Eighth Circuit took place on February 15, 2011, and a decision is expected within the next several months. No party will be prejudiced by staying proceedings in this case until Pella I is finally resolved because a decision by the Eighth Circuit is forthcoming and that decision will allow the parties to accurately define the issues in this case.

9. Furthermore, judicial economy is best served by staying proceedings in this case until Pella I is resolved so that the Court and parties will not be required to review and respond to filings that may be rendered moot by or be amended based upon the Eighth Circuit's ruling.

10. Accordingly, this Court should stay proceedings in this case pending the final resolution of Pella I.

11. Counsel for Liberty Mutual sought concurrence in this motion from counsel for Pella, which was denied.

WHEREFORE, Liberty Mutual requests that this Court stay proceedings in this case. Liberty Mutual further requests any and all other relief to which it is entitled.

        *s/ Danielle Perez*_____
        Charles W. Browning
        Jeffrey C. Gerish
        Kenneth C. Newa
        Danielle Perez
        Plunkett Cooney
        38505 Woodward Avenue, Ste. 2000
        Bloomfield Hills, MI 38304
        (248) 901-4000 Phone
        (248) 901-4040 Facsimile
        cbrowning@plunkettcooney.com
        jgerish@plunkettcooney.com
        knewa@plunkettcooney.com
        dperez@plunkettcooney.com

        and

        Robert V.P. Waterman, Jr.
        Lane & Waterman LLP
        220 N. Main Street, Suite 600
        Davenport, IA 52801
        (563) 324-3246 Phone
        (563) 324-1616 Facsimile
        bwaterman@l-wlaw.com

        *Attorneys for Liberty Mutual Insurance Company*

Dated: August 5, 2011

# CERTIFICATE OF SERVICE

       I hereby certify that on August 5, 2011, I electronically filed a copy of ***Defendant Liberty Mutual Insurance Company's Motion for Stay of Proceedings*** with the Clerk of the Court using the ECF system, which will send notification to all counsel of record who have filed appearances in this action.

       *s/ Danielle Perez*_____
Danielle Perez
Charles W. Browning
Jeffrey C. Gerish
Kenneth C. Newa
Plunkett Cooney
38505 Woodward Avenue, Ste. 2000
Bloomfield Hills, MI 38304
(248) 901-4000 Phone
(248) 901-4040 Facsimile
cbrowning@plunkettcooney.com
jgerish@plunkettcooney.com
knewa@plunkettcooney.com
dperez@plunkettcooney.com

and

Robert V.P. Waterman, Jr.
Lane & Waterman LLP
220 N. Main Street, Suite 600
Davenport, IA 52801
(563) 324-3246 Phone
(563) 324-1616 Facsimile
bwaterman@l-wlaw.com

*Attorneys for Liberty Mutual Insurance Company*

Open.06856.12054.11080802-1