# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| PELLA CORPORATION, PELLA WINDOWS AND DOORS, INC., and PELLA WINDOWS AND DOORS OF ONTARIO CORP., <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Defendant. <br><br> LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> PELLA CORPORATION and PELLA WINDOWS AND DOORS OF ONTARIO CORP., <br><br> Third-Party Defendants. | Case No.: 4:11-cv-00273-JEG-TJS |

**PELLA'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO CERTIFY QUESTION OF LAW TO THE IOWA SUPREME COURT**

Robin L. Cohen, Esq.
Keith McKenna, Esq.
Marc T. Ladd, Esq.
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, NY 10019
Tel: (212) 402-9400
Fax: (212) 402-9444

Richard W. Lozier, Jr., Esq.
BELIN McCORMICK, P.C.
666 Walnut Street, Suite 2009
Des Moines, Iowa 50309-3989
Tel: (515) 283-4636
Fax: (515) 558-0636

*Attorneys for Pella Corporation, Pella Windows and Doors, Inc.,
and Pella Windows and Doors of Ontario Corp.*

## **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................1

I.  THE QUESTION OF WHETHER DAMAGES FROM AN INSURED'S OWN
    DEFECTIVE WORK CAN CONSTITUTE AN "OCCURRENCE" UNDER
    IOWA LAW SHOULD BE CERTIFIED TO THE IOWA SUPREME COURT ...............1

    A.  The Issue of Coverage for an Insured's Defective Work Specifically
        Was Left Open by the *Westlake* Court and Remains Unsettled under
        Iowa Law .................................................................................................................1

    B.  All of the Other Factors Weigh in Favor of Certification ........................................4

CONCLUSION .........................................................................................................................5

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cincinnati Ins. Co. v. Concept Builders, Ltd.*,
  No. LACV024669, 2016 WL 878020 (Iowa Dist. Ct. Cass Cnty. Jan. 27, 2016) .................3, 4

*City of Carter Lake v. Aetna Cas. & Sur. Co.*,
  604 F.2d 1052 (8th Cir. 1979) ..................................................................................................3

*Gen. Cas. Ins. Cos. v. Exterior Sheet Metal, Inc.*,
  No. C01-2085, 2002 WL 32172280 (N.D. Iowa Dec. 24, 2002) ..........................................3, 4

*Liberty Mut. Ins. Co. v. Pella Corp.*,
  650 F.3d 1161 (8th Cir. 2011) ..........................................................................................1, 2, 4

*Nat'l Sur. Corp. v. Dustex Corp.*,
  291 F.R.D. 321 (N.D. Iowa 2013) ............................................................................................4

*Nat'l Sur. Corp. v. Westlake Invs., LLC*,
  880 N.W.2d 724 (Iowa 2016) ........................................................................................ passim

*Pursell Constr., Inc. v. Hawkeye-Sec. Ins. Co.*,
  596 N.W.2d 67 (Iowa 1999) .............................................................................................1, 2, 3

*Sickler v. Auto Owners Ins. Co.*,
  871 N.W.2d 521 (Iowa Ct. App. 2015) .....................................................................................3

*Strotman Bldg. Ctr., Inc. v. West Bend Mut. Ins. Co.*,
  Nos. 98-1525, 9-212, 1999 WL 975842 (Iowa Ct. App. Oct. 27, 1999) ..................................1

*Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*,
  216 S.W.3d 302 (Tenn. 2007) ...................................................................................................3

*W.C. Stewart Constr., Inc. v. Cincinnati Ins. Co.*,
  No. 08-0824, 2009 WL 928871 (Iowa Ct. App. Apr. 8, 2009) .........................................1, 2, 4

**OTHER AUTHORITIES**

L.R. 7(g) .........................................................................................................................................1

Pursuant to Local Rule 7(g), Pella[1] respectfully submits this reply memorandum of law in further support of its motion to certify a question of law to the Iowa Supreme Court.

## ARGUMENT

**I. THE QUESTION OF WHETHER DAMAGES FROM AN INSURED'S OWN DEFECTIVE WORK CAN CONSTITUTE AN "OCCURRENCE" UNDER IOWA LAW SHOULD BE CERTIFIED TO THE IOWA SUPREME COURT**

### A. The Issue of Coverage for an Insured's Defective Work Specifically Was Left Open by the *Westlake* Court and Remains Unsettled under Iowa Law

Pella and Liberty agree that the first factor to be considered in determining whether certification to the Iowa Supreme Court is appropriate is "the extent to which the legal issue under consideration has been left unsettled by the state courts." Pella Br. at 5-7; Liberty Opp. at 3-6.[2] Despite overwhelming evidence to the contrary, Liberty argues that under *Pursell Construction, Inc. v. Hawkeye-Security Insurance Co.*, 596 N.W.2d 67 (Iowa 1999) ("*Pursell*") and certain cases purporting to follow *Pursell*,[3] it is "settled" Iowa law that defective work does not give rise to an "occurrence" if it results in damage – even "damage extend[ing] beyond the defective work itself" – that is the "natural, foreseeable consequences" of that work. Liberty Opp. at 4. Liberty maintains this position even after the Iowa Supreme Court held in *National Surety Corp. v. Westlake Investments, LLC*, 880 N.W.2d 724 (Iowa 2016) ("*Westlake*") that water damage caused by a subcontractor's defective construction work was the result of an "occurrence," as defined in Liberty's CGL Policies. Although it points to nothing in its policy language to support this position, it contends that the "occurrence" analysis is different for work

---

[1] Capitalized terms herein have the meaning as defined in Pella's opening brief ("Pella Br."), Dkt. No. 213-1.
[2] "Liberty Opp." refers to Liberty's Response in Opposition to Pella's Motion to Certify Question of Law to the Iowa Supreme Court, Dkt. No. 215.
[3] *W.C. Stewart Constr., Inc. v. Cincinnati Ins. Co.*, No. 08-0824, 2009 WL 928871 (Iowa Ct. App. Apr. 8, 2009) ("*W.C. Stewart*") and *Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161 (8th Cir. 2011) ("*Pella II*"). Liberty also cites *Strotman Building Center, Inc. v. West Bend Mutual Insurance Co.*, Nos. 98-1525, 9-212, 1999 WL 975842, at *3-4 (Iowa Ct. App. Oct. 27, 1999) even though the only damages alleged in *Strotman* were to the insured's own work (the poor construction of an entire house) and "economic losses" related to the same, not the insertion of a product into a building that caused damage to property beyond the product.

performed by subcontractors, and that the reasoning in *Pursell* still applies here to deny coverage to Pella because *Pursell* involved the insured's own defective work and was not overruled in *Westlake*. Liberty Opp. at 5. Liberty's arguments are without merit.

First, because the defective work in *Westlake* was alleged to have been done by the insured's subcontractor and not the insured, the Court specifically stated that it "need not consider whether property damage arising due to the insured's own defective workmanship may constitute an occurrence in the context of a modern standard-form CGL policy." 880 N.W.2d at 738 n.8. If Liberty were correct that this question already was "settled" by *Pursell*, *W.C. Stewart* and *Pella II*, the *Westlake* Court would have said so. Instead, it specifically left the issue open.

Second, contrary to Liberty's contention, *Westlake* did not "explicitly predicate[]" its distinguishing of *Pursell* on the "crucial and dispositive" fact that the work was done by the insured's subcontractor rather than the insured itself. Liberty Opp. at 6. While the Court noted that the defective work in that case was done by the insured's subcontractor, it primarily distinguished *Pursell* on the ground that it only involved damage to the insured's own work:

> Most importantly, our holding in *Pursell* was limited by its plain language to situations in which the insured performed defective work and sought coverage for the cost of repairing the defective work product. By implication, *Pursell* anticipated that a CGL policy might provide coverage for at least some claims arising from defective construction, just not claims seeking coverage for repairing or replacing the insured's own defective work product.

*Westlake*, 880 N.W.2d at 738. The Court held that it "need not decide whether to overrule *Pursell*" only because the defective work at issue in *Westlake* "caused extensive property damage to the [apartment] complex." *Id.* at 738 n.9.

Moreover, the *Westlake* Court also held that *Pursell* was inapplicable because it "did not address whether language contained in the exceptions and exclusions appearing in the body of the policy created any ambiguity with respect to the meaning of the term 'accident.'" *Id.* at 737.

2

Thus, while Liberty argues here that certain "business risk" exclusions in the CGL form are irrelevant (Dkt. No. 180 at 14-15), the *Westlake* Court relied on these same exclusions in holding that "[i]t would be illogical for an insurance policy to contain an exclusion negating coverage its insuring agreement did not actually provide." 880 N.W.2d at 740. Because the Iowa Supreme Court has never considered the effect of these exclusions on the scope of coverage available for the insured's own defective work or product, this is still an open issue that needs to be resolved.

Third, while Liberty asserts that "settled" Iowa law rejects coverage for damages that are the "foreseeable" result of defective work, it ignores that this position is contrary to the reasoning in *Westlake*, which expressly relied on a Tennessee Supreme Court case that "rejected the insurer's argument that water penetration was not unforeseen or unexpected . . . because it was a natural consequence of faulty window installation." *Id.* at 743 (citing *Travelers Indemnity Co. of America v. Moore & Associates, Inc.*, 216 S.W.3d 302, 308 (Tenn. 2007)).[4]

Fourth, the only way that Liberty is even able to suggest that its position is "settled" Iowa law is to *literally ignore and make no mention* of the Iowa state court decisions holding the opposite. Liberty fails to mention *Sickler v. Auto Owners Insurance Co.*, 871 N.W.2d 521 (Iowa Ct. App. 2015) (Dkt. No. 205-1) where the Iowa Court of Appeals found that coverage was not barred under *Pursell* for damages resulting from an insured's defective engine work "because the only damage alleged from the defective workmanship [in *Pursell*] . . . was to the work product itself." There also is no mention of *Cincinnati Insurance Co. v. Concept Builders, Ltd.*, No. LACV024669, 2016 WL 878020, *3 (Iowa Dist. Ct. Cass Cnty. Jan. 27, 2016) (Dkt. No. 210-1), where the court *and the insurer*, *Cincinnati*, agreed that *Pursell* did not bar coverage for damages resulting from the insured's defective roof work because, unlike *Pursell*, "[p]roperty other than

---

[4] Iowa federal decisions also have rejected the argument that damages are not covered if they are foreseeable from an insured's negligence. *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1058 (8th Cir. 1979); *Gen. Cas. Ins. Cos. v. Exterior Sheet Metal, Inc.*, No. C01-2085, 2002 WL 32172280, at *9 (N.D. Iowa Dec. 24, 2002).

3

the work product itself was damaged."[5]  This glaring omission is fatal to Liberty's position.

These decisions involved coverage for damages caused by the insured's *own* defective work.  Yet none of them cited *W.C. Stewart*, *Pella II* or any other decision for Liberty's position that the insured was required to show that the damages it caused were the result of an unforeseen "intervening act" and were not the "natural, foreseeable consequence[]" of the insured's defective work in order to establish an "occurrence."  Liberty Opp. at 4.  Indeed, neither *W.C. Stewart* nor *Pella II* mentions anywhere in their holdings that only unforeseeable damages resulting from an "intervening act" are covered under a CGL Policy.[6]

In short, it cannot be said that Iowa law is "settled" on whether an "occurrence" exists if an insured's defective work or products unexpectedly and unintentionally causes third-party property damage, particularly where the Iowa Supreme Court expressly left that issue open.

### B.     All of the Other Factors Weigh in Favor of Certification

Liberty's cursory analysis of the remaining five factors for certification does little to avoid the conclusion that, for the reasons stated in Pella's opening brief, these factors also all weigh heavily in favor of certification.  *See* Pella Br. at 7-9.  Indeed, the fact that the Iowa Supreme Court just decided *Westlake* two months ago means not only that the Court is very familiar with Iowa law on the "occurrence" issue, but also that, despite the demands of its docket, it felt that the unresolved "occurrence" issue presented in *Westlake* – whether a CGL policy covers unexpected or unintended third-party property damage resulting from the defective

---

[5] Liberty also makes no mention of the Iowa *federal* court decisions that have agreed with Pella's position that Iowa law provides coverage for damages to third-party property resulting from an insured's defective work. *See, e.g.*, *Gen. Cas.*, 2002 WL 32172280, at *7-9 (finding "occurrence" where insured's negligent roof construction caused third-party property damage); *Nat'l Sur. Corp. v. Dustex Corp.*, 291 F.R.D. 321, 329 (N.D. Iowa 2013) (App. 5126) (allowing insured discovery on insurer's knowledge of third-party property damage to rebut insurer's argument that there was no "occurrence" because "Iowa law require[s] damage to third-party property for there to be an 'occurrence'").

[6] It is worth noting that even if Liberty were correct that the Eighth Circuit's decision in *Pella II* "already settled" this issue (Liberty Opp. at 2), that still is irrelevant to the certification question, which focuses on whether the issue is settled in "the state courts" – not in federal courts interpreting state law.

work of an insured's subcontractor – was significant enough that it should hear the case. There is therefore every reason to believe that the Court also would want to consider the issue in this case – whether a CGL policy covers unexpected or unintended third-party property damage resulting from an insured's own defective work or product.

In that regard, the fifth factor for certification, "the frequency that the legal issue in question is likely to recur," warrants particular mention. The language at issue in Liberty's CGL Policies is standard form language that is contained in policies held by other Iowa policyholders. While Liberty asserts that the issue of coverage for an insured's defective work does not come up that much in Iowa (Liberty Opp. at 7), the frequency of the recent case law does not bear that out. Moreover, Liberty's policy construction essentially eviscerates coverage for bodily injury or property damage caused by a *product manufacturer's or seller's negligence*. Under Liberty's argument, if damages caused by a defective product are foreseeable, a product manufacturer can be held liable for negligence but there is no "liability" coverage, and if damages are not foreseeable, then there is "liability" coverage, but the insured has no liability. That result is directly at odds with case law applying Iowa law, including *Westlake*. Because insurers like Liberty, however, will continue to assert that the reasoning in *Westlake* does not apply to the insured's own negligence, this Court should certify the issue to the Iowa Supreme Court so that it can resolve it and clarify the scope of coverage available to product manufacturers and sellers.

Finally, Liberty's assertion that "further delay" of this case will unfairly prejudice it is baseless, since the issue presented for certification is the threshold legal issue that will control the remainder of the case.

## **CONCLUSION**

For the foregoing reasons, and those advanced in its opening brief, Pella respectfully requests that the Court grant its Motion to Certify Question of Law to the Iowa Supreme Court.

Dated: August 18, 2016

         Respectfully submitted,

         MCKOOL SMITH, P.C.

By:    /s/ *Keith McKenna*
         Robin L. Cohen
         Keith McKenna
         Marc T. Ladd
         One Bryant Park, 47th Floor
         New York, New York 10036
         Telephone: (212) 402-9400
         Facsimile: (212) 402-9444
         rcohen@mckoolsmith.com
         kmckenna@mckoolsmith.com
         mladd@mckoolsmith.com

         and

         BELIN McCORMICK, P.C.
         Richard W. Lozier, Jr.  AT0004843
         666 Walnut Street, Suite 2000
         Des Moines, Iowa 50309-3989
         Telephone: (515) 283-4636
         Facsimile: (515) 558-0636
         rwlozier@belinmccormick.com

         *Attorneys for Pella Corporation, Pella Windows and Doors, Inc., and Pella Windows and Doors of Ontario Corp.*

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served on this 18th day of August, 2016, to all counsel of record by electronic mail through CM/ECF.

Signature:   */s/ Lori McKimpson*

BELIN\P0648\0002\(02473569)

6