IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PELLA CORPORATION, PELLA WINDOWS AND DOORS, INC, and PELLA WINDOWS AND DOORS OF ONTARIO CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Defendant. <br><br> LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> PELLA CORPORATION and PELLA WINDOWS AND DOORS OF ONTARIO CORP., <br><br> Third-Party Defendants. | No. 4:11-cv-00273 – JEG <br><br> **O R D E R** |

This matter comes before the Court on a motion for partial summary judgment (the Motion), ECF No. 252, filed by Plaintiffs Pella Corporation, Pella Windows and Doors of Ontario Corporation, and Pella Windows and Doors, Inc. (collectively, Pella). Pella requests an order setting forth the particular policy years triggered by fourteen Sample Claims with regard to the applicable policies' duty to pay defense costs. Defendant Liberty Mutual Insurance Company (Liberty) resists. Neither party has requested a hearing. The matter is fully submitted and ready for disposition.

1

I.   **BACKGROUND**[1]

This Court's prior Orders, Pella Corp. v. Liberty Mut. Ins. Co., 221 F. Supp. 3d 1107 (S.D. Iowa 2016); Pella Corp., 244 F. Supp. 3d 931 (S.D. Iowa Mar. 22, 2017), and Pella Corp., 246 F. Supp. 3d 1247 (S.D. Iowa Mar. 31, 2017), set forth in detail the factual and legal background for the case. The Court will not restate that information here except to highlight certain aspects of the procedural history of this case and certain facts relevant to the Motion.

The Motion follows this Court's order dated March 22, 2017, resolving partial summary judgment motions by both parties on the issue of allocation (the March 22 Order). In that order, the Court held that the CGL Policies provide for pro rata allocation of indemnity payments where a single occurrence triggers multiple policies. Pella Corp., 244 F. Supp. 3d at 949. The Court also held that the CGL Policies were ambiguous with respect to allocation of defense costs and thus interpreted the policies in the insured's (Pella's) favor, applying all-sums allocation. Id. at 949-50. Finally, the Court addressed Liberty's request for a declaration regarding the particular policy periods triggered by each of the Sample Claims. Id. at 950. The Court granted summary judgment with respect to the Sample Claims where the parties did not dispute which Liberty policies were triggered. Id. at 951. The Court denied summary judgment with respect to the remaining Sample Claims, finding genuine disputes of material fact prevented summary judgment in Liberty's favor on the issue of when the alleged damage began. Id.

In its discussion of which Liberty policies were triggered by the Sample Claims, the Court did not analyze whether any of the Sample Claims triggered different Liberty policies for purposes of defense costs coverage versus indemnity coverage. Liberty, the movant, did not

---

[1] The facts here are either materially undisputed or, if genuinely disputed, viewed in the light most favorable to the nonmoving party. See Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).

make any such distinctions in its request for declaratory relief. Id. at 951 n.19. The Court did, however, note that for two Sample Claims, Pella argued that Liberty's obligation to reimburse defense costs adhered prior to Liberty's obligation to indemnify. Id. at 951 & n.19. The Court also observed that it may be possible for an underlying claim to trigger an insurer's duty to reimburse defense costs during policy periods prior to the first policy period under which a duty to indemnify arises. Id. at 951 n.19. The Court did not resolve Pella's argument regarding the triggering period for defense costs because Pella did not move for summary judgment on the question of which Liberty policies had been triggered by the Sample Claims. Id. Instead, the Court found that summary judgment was inappropriate on that portion of Liberty's motion without needing to reach Pella's argument specific to defense costs coverage.

Pella now moves for summary judgment on the issue of when fourteen of the fifteen Sample Claims first triggered the obligation to reimburse defense costs as to Liberty.[2] Pella argues that the Sample Claims triggered the following Liberty policy periods for defense costs purposes:[3]

| Sample Claim | Pella's Position |
| --- | --- |
| 464 Prospect | 2000-01 to 2004-05 |
| Diamantis | 2000-01 to 2007-08 |
| Eakins | 2000-01 to 2005-06 |
| G.T. Leach | 2000-01 to 2007-08 |
| Kaslly | 2001-02 to 2004-05 |
| Leal | 2000-01 to 2002-03 |
| London Bay | 2000-01 to 2005-06 |

---

[2] The parties do not disagree regarding the final policy periods implicated by each of the Sample Claims. See Pella Corp., 244 F. Supp. 3d at 951.

[3] Beginning with September 1, 2000, Liberty's annual policy periods begin on September 1. Pella Corp., 221 F. Supp. 3d at 1109.

| | |
|---|---|
| Marseilles | 2000-01 to 2002-03 |
| Morse | 2001-02 to 2007-08 |
| Newland | 2001-02 to 2003-04 |
| Palmetto | 2000-01 to 2006-07 |
| Pappas | 2000-01 to 2002-03 |
| Parkloft | 2000-01 to 2006-07 |
| South Beach | 2000-01 to 2006-07 |

Pella argues that Liberty's duty to defend attaches from the point that property damage could potentially have begun, which Pella takes to mean the time at which the underlying claimant installed or potentially could have installed the Pella windows at issue in the underlying claims. Pella points to a variety of facts in the record as showing the time during which property damage could potentially have begun, including: actual dates of installation, where available; construction completion dates for the structure(s) in which the windows were installed; dates of delivery, purchase, or manufacture of the windows; and finally, policy periods referenced in Liberty's claims notes as being potentially implicated by the claims. In response, Liberty argues that this Court already held that a disputed fact precluded summary judgment for either side on the question of which policies were triggered for defense cost purposes. Liberty also argues that the underlying complaints in the Sample Claims were silent as to when damage began, resulting in a factual dispute between the parties' experts about when damage began.

With respect to each Sample Claim, Pella highlights the following evidence in the record to support its arguments regarding when damage arguably or potentially began:

*The 464 Prospect Claim.* Pella argues that defense costs for the 464 Prospect Claim are covered by Liberty policies beginning in the policy year 2000-01. The products at issue were delivered for installation in April and May 2001. Liberty's claims notes state that the products

were installed in 2001 and indicate that the 2000-01 Liberty policy period was potentially implicated by the claim.

The *Diamantis Claim*.  Pella argues that defense costs for the Diamantis Claim are covered by Liberty policies beginning in the policy year 2000-01.  The underlying complaint alleges that the Pella products at issue were installed in 1995, prior to Liberty's first policy period (2000-01).

*The Eakins Claim*.  Pella argues that defense costs for the Eakins Claim are covered by Liberty policies beginning in the policy year 2000-01.  The underlying complaint alleges that the Pella products at issue were installed beginning in 1999, prior to Liberty's first policy period.

*The G.T. Leach Claim*.  Pella argues that defense costs for the G.T. Leach Claim are covered by Liberty policies beginning in the policy year 2000-01.  The underlying complaint alleges that the Pella products at issue were delivered between May and August 2001.  Liberty's claims notes indicate that the 2000-01 policy period was potentially implicated by the claim.

*The Kaslly Claim*.  Pella argues that defense costs for the Kaslly Claim are covered by Liberty policies beginning in the policy year 2001-02.  Documents in the record indicate that the Pella products at issue were installed between July and August 2002.

*The Leal Claim*.  Pella argues that defense costs for the Leal Claim are covered by Liberty policies beginning in the policy year 2000-01.  Documents in the record include a purchase invoice and payment check for Pella products from 1996, prior to Liberty's first policy period.

*The London Bay Claim*.  Pella argues that defense costs for the London Bay Claim are covered by Liberty policies beginning in the policy year 2000-01.  The underlying complaint alleges that the Pella products at issue were installed in a building that was certified for

occupancy in April 2001. Liberty's claims notes indicate that the Pella products were installed in 2000.

*The Marseilles Claim.* Pella argues that defense costs for the Marseilles Claim are covered by Liberty policies beginning in the policy year 2000-01. Documents in the record indicate that the Pella products at issue were installed in a facility that was completed in 2000.

*The Morse Claim.* Pella argues that defense costs for the Morse Claim are covered by Liberty policies beginning in the policy year 2001-02. The underlying complaint alleges that the Pella products at issue were installed in November 2001.

*The Newland Claim.* Pella argues that defense costs for the Newland Claim are covered by Liberty policies beginning in the policy year 2001-02. Liberty does not appear to dispute this.

*The Palmetto Claim.* Pella argues that defense costs for the Palmetto Claim are covered by Liberty policies beginning in the policy year 2000-01. Liberty's claims notes indicate the Pella products at issued were installed beginning in 2001, and that the 2000-01 policy period was potentially implicated by the claim.

*The Pappas Claim.* Pella argues that defense costs for the Pappas Claim are covered by Liberty policies beginning in the policy year 2000-01. Liberty does not dispute this.

*The Parkloft Claim.* Pella argues that defense costs for the Parkloft Claim are covered by Liberty policies beginning in the policy year 2000-01. The Pella products at issue were delivered to the builder in July 2001. Liberty's claims notes indicate the Pella products were installed sometime in 2001. Liberty's claims notes also indicate that the 2000-01 policy period was potentially implicated by the claim.

*The South Beach Claim.* Pella argues that defense costs for the South Beach Claim are covered by Liberty policies beginning in the policy year 2000-01. The underlying pleading

alleges that the plaintiffs hired contractors to install Pella windows in October 2000 and March 2001. Documents in the record indicate that the Pella products at issue were manufactured in 2000 or 2001 and were installed in approximately 2001.

## II. DISCUSSION

### A. Standard for Summary Judgment

The Court shall grant summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (alterations in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the movant makes such a showing, to avoid summary judgment the nonmovant must "set out 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Celotex, 477 U.S. at 324). A genuine issue for trial requires more than "some metaphysical doubt as to the material facts." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

### B. Policy Periods Triggered for Defense Cost Purposes

Liberty implies that this Court's March 22 Order has already resolved the question presented by Pella's Motion: which Liberty policies are triggered by each of the Sample Claims for purposes of defense costs coverage. In denying in part Liberty's motion for summary judgment on this issue, this Court found only that Liberty had failed to meet its burden to establish no genuine dispute of material fact in favor of its preferred allocation periods. Pella Corp., 244 F. Supp. 3d at 951. This Court explicitly declined to address Pella's arguments

regarding the Liberty policies triggered for purposes of defense costs coverage because Pella had not moved for declaratory relief on that issue, and it was not necessary to reach that issue to deny in part Liberty's motion. Id. at 951 n.19.

As noted in the March 22 Order, under Iowa law "the defense cost obligation adheres once an underlying claim 'contains any allegations that arguably or potentially bring the action within the policy coverage.'" Id. (quoting Liberty Mut. Ins. Co. v. Pella Corp., 650 F.3d 1161, 1170-71 (8th Cir. 2011)). "[I]t is the allegations of fact in the underlying complaint, not the legal labels under which a plaintiff decides to seek relief, that determine the scope of the duty to defend." Liberty Mut. Ins. Co. v. Pella Corp., 633 F. Supp. 2d 714, 721 (S.D. Iowa 2009) (citing Emp'rs Mut. Cas. Co. v. Cedar Rapids Tel. Co., 552 N.W.2d 639, 642 (Iowa 1996)). Because the duty to defend is "broader than the duty to indemnify," this means that "defense coverage should be triggered in most cases as indemnity coverage cannot be ruled out." Hudson Hardware Plumbing & Heating, Inc. v. AMCO Ins. Co., No. 15-1677, 2016 WL 5930779, at *3 (Iowa Ct. App. Oct. 12, 2016) (unpublished table decision).[4] For claims that are pled broadly, a liability insurer may consider facts beyond the allegations in the underlying pleading. Id. at *4.[5] The duty to defend does not attach where the facts suggest that the claim is not covered. Id.; see also Van Der Weide v. Cincinnati Ins. Co., No. C14-4100-LTS, 2017 WL 125037, at *5 (N.D. Iowa Jan. 12, 2017) ("[A]n insurer is not required to provide a defense when no facts presently

---

[4] "[T]he duty to reimburse defense costs and the duty to defend are different but 'similar in result.'" Liberty Mut., 650 F.3d at 1170 (quoting McCuen v. Am. Cas. Co. of Reading, Pa., 946 F.2d 1401, 1407 (8th Cir. 1991)).

[5] This inquiry is appropriate because "notice pleading petitions . . . often give few facts upon which to assess an insurer's duty to defend." Van Der Weide v. Cincinnati Ins. Co., No. C14-4100-LTS, 2017 WL 125037, at *5 (N.D. Iowa Jan. 12, 2017) (quoting Harker's Distrib., Inc. v. Fed. Ins. Co., No. 08-CV-4105-DEO, 2009 WL 3199533, at *5 (N.D. Iowa Sept. 30, 2009)).

available to it indicate coverage of the claim." (quoting McAndrews v. Farm Bureau Mut. Ins. Co., 349 N.W.2d 117, 119 (Iowa 1984))). "If there is any 'doubt as to whether the petition alleges a claim that is covered by the policy, the doubt is resolved in favor of the insured.'" Pella Corp., 221 F. Supp. 3d at 1127 (quoting Emp'rs Mut., 552 N.W.2d at 641).

Here, the issue is not whether the Sample Claims are covered at all but under which policies the Sample Claims are covered. As noted in the March 22 Order, "the underlying complaints for the various Sample Claims generally contain little detail regarding the time period in which damage is alleged to have occurred; however, many do contain allegations about when the allegedly defective Pella products were sold or installed." Pella Corp., 244 F. Supp. 3d at 950. These allegations, combined with the additional facts in the record regarding the sale, delivery, and installation of the windows, suffice to establish that the Sample Claims had been "arguably or potentially" brought within the coverage of the particular policy periods highlighted by Pella. See Pella Corp., 631 F. Supp. 2d at 1135 & n.15 (finding underlying complaint that alleged window installation in 1992 and discovery of damage in 2006 triggered each Liberty policy between 2000-01 and 2005-06 policy years); Home Depot U.S.A., Inc. v. Ohio Cas. Ins. Co., No. 3:06-CV-24-L, 2007 WL 2089390, at *6 (N.D. Tex. July 20, 2007) ("Home Depot has presented evidence that Davis installed the windows on April 23, 1998 . . . . [U]nder Tennessee law, the Meyers' complaint raised a potential basis for recovery, because it is possible that if the windows were installed between February and April 1998, water intrusion and the attendant property damage could have occurred in 1999, within the 66-day period in which the insurance policy was effective."). Based on the information in the record brought before the Court, Pella has satisfied its burden on summary judgment to identify the portions of the record that demonstrate the absence of a genuine issue of material fact.

Liberty argues that the facts highlighted by Pella fail to shed light on when damages actually or potentially occurred. But this is wrong; facts such as when the products at issue were installed, or when the structure containing the products was completed, do shed light on when damage may *potentially* have occurred. Cf. Van Der Weide, 2017 WL 125037, at *1, *7 (finding that the underlying claim triggered the duty to defend under policy in force from January 1996 through January 1999, when allegedly defective construction completed by 1998 and damage not discovered until 2010). Similarly, notations in Liberty's claims notes regarding product installation or "date of loss" indicate that the underlying claims in question could arguably or potentially have arisen during the policy years indicated in the claims notes. Liberty argues that its "date of loss" notation does not purport to be a determination about when damages began to occur, but when damage actually began is a different question than whether Liberty's decision to assign a "date of loss" during a particular policy period suggests that the claim arguably or potentially arises during that policy period.

Given this, to defeat summary judgment, Liberty must show that the Sample Claims cannot have potentially alleged an occurrence during the policy periods that Liberty says were not triggered. Liberty has failed to do this. See Hudson Hardware, 2016 WL 5930779, at *4 (citing Scott C. Turner, Insurance Coverage of Construction Disputes § 2:1 (2d ed.)). Liberty points to its expert's report, which contains opinions regarding when damage could have begun for each Sample Claim, as creating issues of material fact. But Liberty does not contest the facts set forth above, such as the dates of window installation, which are themselves sufficient to trigger the duty to defend, taking into consideration the allegations in the underlying pleadings in the Sample Claims. There is thus no genuine issue for trial on the question of which Liberty

10

policies were triggered by the Sample Claims with respect to Liberty's duty to reimburse defense costs under the applicable policies.

### III. CONCLUSION

Based on the foregoing, Pella's Motion for Partial Summary Judgment, ECF No. 252, must be **granted**. The Sample Claims trigger the duty to reimburse defense costs for the Liberty policy periods set forth in Pella's Motion, ECF No. 252 at 6.

**IT IS SO ORDERED.**

**DATED** this 16th day of January, 2018.

*/s/ James E. Gritzner*
JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT